UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                              Case No:   2:15-cr-116-FtM-38CM

NIKKO MITCHELL

_____ /

## ORDER[1]

This matter comes before the Court on Defendant Nikko Mitchell's Motion to Dismiss the Indictment ([Doc. #28](#)), filed on June 6, 2016. The United States of America filed a Response ([Doc. #32](#)) on June 20, 2016. Thus, this matter is ripe for review.

### BACKGROUND

This matter arises from the sale of two firearms by two individuals, Jamar James and Defendant Nikko Mitchell, to a Confidential Informant (CI) for the Fort Myers Police Department. ([Doc. #28-1](#)).

On January 3, 2014, the CI agreed to meet with James for the purchase of a firearm. ([Doc. #28-1 at ¶ 1](#)). The CI was provided with $500 and an address at which to meet James. ([Doc. #28-1 at ¶¶ 4-5](#)). Upon arriving at the residence, the CI was told to go a few houses down, to 1023 Polk Street, Fort Myers, Florida. ([Doc. #28-1 at ¶ 8](#)). There, the CI remained in the passenger side of his vehicle. ([Doc. #28-1 at ¶ 8](#)). At the

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their website. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

direction of James, Defendant exited the residence and approached the CI's vehicle. (Doc. #28-1 at ¶ 8). Defendant collected $350 from the CI and returned to the residence. (Doc. #28-1 at ¶ 9). Simultaneously, James exited the residence and approached the vehicle with a black bag containing the firearm. (Doc. #28-1 at ¶ 9).

The CI then left the residence and turned over the firearm to detectives. (Doc. #28-1 at ¶¶ 10-11). Inspection of the firearm showed that it was a Hi-Point, model 4095, .40 caliber rifle, serial number H35232, manufactured in Ohio. (Doc. #28-1 at ¶ 13).

On January 9, 2014, the CI met with James and Defendant for a second transaction. (Doc. #28-2 at ¶ 1). This transaction also took place at 1023 Polk Street, Fort Myers, Florida. (Doc. #28-2 at ¶ 6).

The CI arrived at the residence and met James at the front door, and they were let inside by Defendant. (Doc. #28-2 at ¶ 7). Once inside, James and the CI began discussing firearm prices and Defendant made a phone call. (Doc. #28-2 at ¶ 8). When Defendant ended his call, he told the CI that the owner of the firearm wanted to sell it for $200. (Doc. #28-2 at ¶ 9). The CI gave Defendant $160 and went back to his vehicle to get the additional money. (Doc. #28-2 at ¶ 9). The CI then returned to the residence and handed James the additional $40 in exchange for the firearm. (Doc. #28-2 at ¶ 9).

The CI subsequently left the scene and met with detectives. (Doc. #28-2 at ¶ 11). Inspection of the firearm revealed that it was a Hi-Point, model CF380, .380 caliber pistol, serial number P835492, manufactured in Ohio. (Doc. #28-2 at ¶ 13). The firearm also contained six rounds of live .380 caliber ammunition. (Doc. #28-2 at ¶ 13). Five of the rounds were manufactured in South Korea, and the sixth was manufactured in Arkansas or Connecticut. (Doc. #28-2 at ¶ 13).

On September 2, 2015, Mitchell was indicted on two counts: (1) for being a felon in possession of a firearm and ammunition pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2) relating to the firearm with serial number H35232; and (2) for being a felon in possession of a firearm and ammunition pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2) relating to the firearm with serial number P835492.  Defendant now moves to dismiss both counts of the indictment.

## STANDARD OF REVIEW

An "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the Government." Fed. R. Crim. P. 7(c)(1).  "An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *U.S. v. Steele*, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (citation omitted).  A "district court [must] dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense." *U.S. v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983).

## DISCUSSION

### 1. Failure to State an Offense

To convict Defendant under 18 U.S.C. §§ 922(g)(1) and 924(a)(2), the Government must prove that (1) Defendant knowingly possessed a firearm or ammunition, (2) Defendant was previously convicted of an offense punishable by a term of imprisonment exceeding one year, and (3) the firearm or ammunition was in or affecting interstate commerce. *U.S. v. Palma*, 511 F.3d 1311, 1315 (11th Cir. 2008) (citation omitted).

Knowing possession can be established by either actual or constructive possession. *U.S. v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006). A defendant has constructive possession over a firearm if he exercises ownership, dominion, or control over the firearm, or if he has the power and intention to exercise dominion or control over it. *U.S. v. Gunn*, 369 F.3d 1229, 1235 (11th Cir. 2004) (citations omitted).

Defendant argues that the Government has not put forth evidence that a jury may reasonably rely on in determining Defendant's possession of the firearms at issue. (Doc. #28 at 5). The Court disagrees. While a defendant's mere presence in the area of a firearm or his knowledge of its location alone is not sufficient to establish constructive possession, a defendant may exercise constructive possession through third parties. *See U.S. v. Pedro*, 999 F.2d 497, 501-02 (11th Cir. 1993) (internal quotations and citation omitted); *see also Gunn*, 369 F.3d at 1235. Moreover, "[a] firearm need not be on or near the defendant's person in order to amount to knowing possession." *U.S. v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004). The Government has sufficiently shown that Defendant had knowledge that the firearms were kept in his residence. Defendant was also observed transferring monies in exchange for the firearms and negotiating the price for which one of the firearms was sold. Based on this evidence, a reasonable jury would be able to conclude that Defendant had knowing possession of the firearms. The Court therefore finds that the indictment does not fail to state an offense.

2. **Constitutionality of 18 U.S.C. § 922**

Defendant also argues that the application of §§ 922(g)(1) and 924(a)(2) is unconstitutional because his intrastate possession of the firearms does not substantially affect interstate commerce. (Doc. #28 at 6). The Government responds that such

application is constitutional, as it has demonstrated that the firearms are sufficiently linked to interstate commerce. (Doc. #32 at 8). The Court agrees with the Government.

18 U.S.C. § 922 has been found facially valid under the scope of the Commerce Clause. *See U.S. v. Scott*, 263 F.3d 1270, 1273 (11th Cir. 2001). In relevant part, § 922 makes it unlawful for a felon to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g). The express jurisdictional element defeats a defendant's facial challenge to its constitutionality. *U.S. v. McAllister*, 77 F.3d 387, 389-90 (11th Cir. 1996). The Court therefore rejects Defendant's challenge to the constitutionality of § 922(g)(1).

Defendant further argues that § 922 is unconstitutional as applied to him because the Government has no factual basis to support that he was involved in interstate commerce. (Doc. #28 at 11). To support this argument, Defendant asserts that the "minimal nexus" requirement established by the Supreme Court should not be followed here. *See Scarborough v. U.S.*, 431 U.S. 563, 575 (1977) (holding that the interstate nexus requirement for the predecessor statute to § 922 was met if the Government demonstrated that the firearm had travelled through interstate commerce). Defendant relies on *U.S. v. Lopez*, 514 U.S. 549, 567 (1995) to show that a "minimal nexus" test is improper, and the Court should instead undertake a case-by-case inquiry to determine if firearm possession affects interstate commerce.

Defendant's reliance on *Lopez* is misguided. In *Lopez*, the Supreme Court found it dispositive that § 922(q), which outlawed the possession of a firearm within a school zone, was not an essential part of a larger regulation of economic activity and did not have an express jurisdictional requirement that might limit its reach to a discrete set of

cases that have an explicit connection with or effect on interstate commerce. See *Lopez*, 514 U.S. at 561-62. In contrast, § 922(g) explicitly requires that firearms have a connection to interstate commerce and therefore does concern a discrete set of firearm cases. See *McAllister*, 77 F.3d at 390. Moreover, § 922 is part of a larger scheme of economic regulation. See *id*. *Lopez* does not suggest that the "minimal nexus" test should be changed. *Id*. Defendant has not provided the Court with any binding authority suggesting that a case-by-case inquiry is appropriate under § 922(g). The Court is unpersuaded by this argument and will not venture into such analysis.

The Government has provided evidence showing that the firearms and ammunition at issue were manufactured outside of Florida. (Doc. #28-3). Because the firearms the Defendant sold had previously travelled through interstate commerce, the "minimal nexus" requirement is satisfied here. See *McAllister*, 77 F.3d at 390. The Court rejects Defendant's argument that § 922(g)(1) is unconstitutional as applied to him.

3. **Commercial Activity and Aggregation**

Defendant argues that his possession of the firearms does not fall within the scope of interstate commerce because intrastate possession is not a commercial activity. (Doc. #28 at 11). Defendant cites to *National Federation of Independent Business v. Sebelius*, 132 S.Ct. 2566 (2012), in which the Supreme Court held that Congress' power under the Commerce Clause is limited to the regulation of pre-existing commercial activity. *Id*. at 2586-87. In other words, Congress does not have the power to compel individuals not engaged in commerce to purchase a product. *Id*. at 2586. Congress does, however, have the power to regulate intrastate activities that, when aggregated, substantially affect interstate commerce. *Id*. (citation omitted).

Defendant's case is not at all similar to *Sebelius*.  In passing § 922, Congress sought to eliminate a commercial activity – the interstate flow of firearms to felons – rather than "forc[ing] individuals into commerce because they elected to refrain from commercial activity." *See id.* at 2591.  The Government has put forth sufficient evidence to show that Defendant possessed two firearms that were manufactured outside of Florida. ([Doc. #28-3](#)).  As the Court has previously discussed, this alone is enough to satisfy the "minimal nexus" between the firearms and interstate commerce.  Therefore, Defendant's possession of the firearms was an affirmative commercial activity.  Moreover, "[w]hen viewed in the aggregate, a law prohibiting the possession of a gun by a felon stems from the flow of guns in interstate commerce to criminals." *McAllister*, 77 F.3d at 390.  Because § 922 regulates a type of commercial activity that, when aggregated, substantially affects interstate commerce, Defendant's argument is without merit.

Accordingly, it is now

**ORDERED:**

Defendant Nikko Mitchell's Motion to Dismiss Indictment ([Doc. #28](#)) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida, this 4th day of August, 2016.

*[Signature: Sheri Polster Chappell]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record